UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AMERICAN REGISTRY, LLC,
a Delaware limited liability company,

        Plaintiffs,

        v.                                Case No. 2:13-cv-00352-JES-SPC

YONAH HANAW a/k/a JOHN HANAW,
MICHAEL LEVY, SHOWMARK
HOLDINGS, LLC, a Delaware limited
liability company, and SHOWMARK
MEDIA, LLC, a Delaware limited liability
company,

        Defendants.

_____/

## THIRD AMENDED COMPLAINT

Plaintiff, AMERICAN REGISTRY, LLC (hereinafter Plaintiff or "AMERICAN REGISTRY"), by and through the undersigned counsel, and pursuant to this Court's December 5, 2013 Order (Doc. 35), files this Third Amended Complaint and sues Defendants, YONAH HANAW a/k/a JOHN HANAW (hereinafter "HANAW"), MICHAEL LEVY (hereinafter "LEVY"), SHOWMARK HOLDINGS, LLC (hereinafter "SHOWMARK HOLDINGS") and SHOWMARK MEDIA, LLC (hereinafter "SHOWMARK MEDIA"), and alleges:

## GENERAL ALLEGATIONS

1.      Plaintiff, AMERICAN REGISTRY, is a limited liability company

organized and existing under the laws of the State of Delaware. The members of AMERICAN REGISTRY owning 100% of its membership interests are TWS Partnership, LLC, a Florida limited liability company, Helen Moskowitz, a citizen of the United States domiciled in the State of Florida, and Mitchel Rothschild, a citizen of the United States domiciled in the State of New York. The members of TWS Partnership, LLC owning 100% of its membership interests are Teddy Struhl and Warren Struhl, both citizens of the United States domiciled in the State of Florida. As such, AMERICAN REGISTRY has a dual base for citizenship and is deemed a citizen of the State of Florida and State of New York for diversity purposes.

2.      Defendant, HANAW, is a citizen of and domiciled in Israel, over the age of eighteen, and is otherwise *sui* juris.

3.      On information and belief, HANAW, by and through SHOWMARK HOLDINGS, owns 75% of the membership interests in SHOWMARK MEDIA.

4.      HANAW is subject to personal jurisdiction in the State of Florida because he has contractually consented to this Court's personal jurisdiction over him by virtue of a forum-selection clause in his agreement with AMERICAN REGISTRY more particularly described below.

5.      Defendant, LEVY, is a citizen of and domiciled in Israel, over the age of eighteen, and is otherwise *sui* juris.

6.      On information and belief, LEVY owns 25% of the membership interests in SHOWMARK MEDIA.

7.      LEVY is subject to personal jurisdiction in the State of Florida because of his business relationship with HANAW in the formation and operation of SHOWMARK MEDIA and the "closely-related party doctrine," under which a third party may be bound to a forum-selection clause when it is closely related to the dispute such that it becomes foreseeable that it may be bound by such a clause.   Additionally, LEVY participated in the formation and organization of SHOWMARK MEDIA originally in Florida, LEVY and SHOWMARK MEDIA conduct business within this judicial district, and LEVY has misappropriated trade secrets and other Proprietary Information of AMERICAN REGISTRY in the formation and operation of SHOWMARK MEDIA within this judicial district in order to sell personalized, customized achievement recognition items. Moreover, LEVY has engaged in tortious and intentional conduct designed to cause and which in fact caused injury to AMERICAN REGISTRY in the State of Florida and this judicial district, including, but not limited to, loss of business and customers, damage to reputation and goodwill, and other expenses incurred as the result thereof.

8.      As is set forth below, LEVY, although not a party to HANAW's agreement with AMERICAN REGISTRY inclusive of a forum-selection clause, is closely related to the dispute between AMERICAN REGISTRY and HANAW and shares a common interest with HANAW and SHOWMARK MEDIA in this action, to-wit:  The right to utilize AMERICAN REGISTRY's trade secrets and other confidential proprietary business information to solicit AMERICAN REGISTRY's customers on behalf of SHOWMARK MEDIA.

9.      Defendant, SHOWMARK HOLDINGS, is a limited liability company organized and existing under the laws of the State of Delaware.

10.     On information and belief, HANAW is the sole member of SHOWMARK HOLDINGS.

11.     On information and belief, SHOWMARK HOLDINGS was formed by HANAW to own and hold HANAW's 75% membership interest in SHOWMARK MEDIA.

12.     SHOWMARK HOLDINGS is subject to personal jurisdiction in the State of Florida because of its close relationship with HANAW in the formation and operation of SHOWMARK MEDIA and the "closely-related party doctrine," under which a third party may be bound to a forum-selection clause when it is closely related to the dispute such that it becomes foreseeable that it may be bound by such a clause.

13.     As is set forth below, SHOWMARK HOLDINGS, although not a party to HANAW's agreement with AMERICAN REGISTRY inclusive of a forum-selection clause, is closely related to the dispute between AMERICAN REGISTRY and HANAW and shares a common interest with HANAW and SHOWMARK MEDIA in this action, to-wit:   The right to utilize AMERICAN REGISTRY's trade secrets and other confidential proprietary business information to solicit AMERICAN REGISTRY's customers on behalf of SHOWMARK MEDIA.

14.     Defendant, SHOWMARK MEDIA, is a limited liability company organized and existing under the laws of the State of Delaware.

15.     SHOWMARK MEDIA conducts its business throughout the United States and in this judicial district, including by offering for sale and selling personalized, customized achievement recognition items through its website, www.showmark.com.

16.     SHOWMARK MEDIA is subject to personal jurisdiction in the State of Florida because of its close relationship with HANAW in the formation and operation of SHOWMARK MEDIA and the "closely-related party doctrine," under which a third party may be bound to a forum-selection clause when it is closely related to the dispute such that it becomes foreseeable that it may be bound by such a clause.

17.     As is set forth below, SHOWMARK MEDIA, although not a party to HANAW's agreement with AMERICAN REGISTRY inclusive of a forum-selection clause, is closely related to the dispute between AMERICAN REGISTRY and SHOWMARK MEDIA shares a common interest with HANAW in this action, to-wit: The right to utilize AMERICAN REGISTRY's trade secrets and other confidential proprietary business information to solicit AMERICAN REGISTRY's customers on behalf of SHOWMARK MEDIA.

18.     This is an action for injunctive relief and damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

19.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

20.     Venue for this Complaint is proper in this Court under, *inter alia*, the forum selection clause contained in the agreement between AMERICAN REGISTRY and

HANAW. All Defendants are bound by the forum selection clause as they are so closely related to the agreement at issue and AMERICAN REGISTRY's dispute with HANAW, and thus, subject to the personal jurisdiction of this Court.

21.     AMERICAN REGISTRY conducts its business throughout the United States and in this judicial district, including by its offering for sale and selling personalized, customized achievement recognition items, such as plaques, marquees, crystals, counter displays and banners.

22.     In connection with its business operations, AMERICAN REGISTRY has developed and/or acquired extensive confidential materials and information necessary to conduct its business operations, including, but not limited to the following:

          a.      Its business plan to enable it to generate significant revenues that would be detrimental to its competitive position in the industry of offering for sale and selling personalized, customized achievement recognition items, such as plaques, marquees, crystals, counter displays and banners, if Defendants, or any other competitor, were to misappropriate or replicate said plan to compete against it;

          b.      Its customer lists and prospective customer lists or any derivation thereof relating to any particular group of its customers or prospective customers as well as the compilation of information contained in its customer relationship management software, including information about volume and frequency of sales, sales associates and representatives, purchasing agents, operations personnel and/or contact persons, pricing and discount strategies, pertinent contractual agreements regarding current business terms

and transactions, transaction histories, purchasing requirements, profitability considerations, customer preferences and sensitivities, quality control standards and procedures, techniques and business efficiencies, graphic files, technical data, leads, and business plans and marketing and sales strategies concerning said customers and prospective customers;

        c.    Its system architecture concerning its plaques, marquees, crystals, counter displays and banners;

        d.    Its financial data concerning revenues generates from its sale of personalized, customized achievement recognition items, such as plaques, marquees, crystals, counter displays and banners;

        e.    Its profits and profit margins with customers in connection with its sale of personalized, customized achievement recognition items, such as plaques, marquees, crystals, counter displays and banners;

        f.    Its statistical history with its customers and vendors;

        g.    Its computer programs and software concerning its entire business operations;

        h.    Its research and development information related to its customers and products offered for sale;

        i.    Its information about its strategic partners and relationships with them (Martindale Hubbell, etc).; and

        j.    Its data and information on its employees, independent contractors

and third party vendors.

All of the aforementioned information shall hereinafter be collectively referred to as the "Proprietary Information." The Proprietary Information is highly confidential and is not available to members of the general public or to competitors.

23. AMERICAN REGISTRY maintains a competitive advantage in the personal achievement recognition market by utilizing the Proprietary Information in its day to day operations.

24. The Proprietary Information, if known or otherwise used in whole or in part by a competitor of AMERICAN REGISTRY, would seriously compromise AMERICAN REGISTRY's ability to compete and to benefit from its investment of hundreds of thousands of dollars in its business operations and strategies.

25. To maintain this competitive advantage, AMERICAN REGISTRY constantly evaluates its Proprietary Information to assure that it meets the needs of its marketplace; redesigns and enhances its Proprietary Information by adding new, innovative concepts in the marketplace; researches and develops new marketing and business strategies to maintain and upgrade its customer base in the marketplace; and requires its sales agents who have access to Proprietary Information to execute a confidentiality agreement just as HANAW did in this case.

26. In or around November, 2003, HANAW became a sales agent and independent contractor of AMERICAN REGISTRY.

27. In furtherance of his independent contractor relationship with AMERICAN

REGISTRY, on or about January 13, 2008, HANAW entered into a Sales Agent Program Agreement ("Agreement") with AMERICAN REGISTRY, a true and accurate copy of which is attached hereto as Exhibit "A."

28.     Pursuant to said Agreement, AMERICAN REGISTRY provided HANAW with qualified leads of individuals or companies who were recently recognized for achievement or received a notable mention in the media for which HANAW was responsible for pursuing said leads and providing the prospective customer of a preview of the wall plaque, desktop marquee or other promotional products via permission-based email and/or fax for purchase by the prospect.   HANAW was to use his best efforts to convert the leads into sales.

29.     Pursuant to the Agreement, HANAW understood and recognized that he would be acquiring knowledge of confidential business information relating to the business or plans of AMERICAN REGISTRY, including, but not limited to, customer lists, customer identity, purchase and credit information, sales and operation procedures of AMERICAN REGISTRY, software of AMERICAN REGISTRY, system architecture of AMERICAN REGISTRY, financial data of AMERICAN REGISTRY, sales and marketing strategies and data of AMERICAN REGISTRY, lists compiled by AMERICAN REGISTRY, statistics, programs, research, development, employee, personnel and contractor data, information and records, and information relating to products offered by AMERICAN REGISTRY.

30.     Pursuant to the Agreement, HANAW agreed to treat all such confidential

business information or trade secrets relating to the business or plans of AMERICAN REGISTRY as confidential and proprietary and further agreed not to publish, communicate, divulge, use or disclose, directly or indirectly, for his own benefit or for the benefit of another, such information.

31.    In or around September, 2009, AMERICAN REGISTRY discovered that HANAW was attempting to deceive AMERICAN REGISTRY by using the phone issued by AMERICAN REGISTRY to dial so that it would appear he was using the phone for sales calls, when in fact he was not. That month, HANAW's bonus from AMERICAN REGISTRY was based on the number of phone calls placed so HANAW had been gaming that bonus system by placing dummy phone calls. HANAW was reprimanded for this unethical conduct and confirmed same by agreeing to make each call individually thereafter.

32.    In furtherance of his independent contractor relationship with AMERICAN REGISTRY, on or about November 1, 2009, HANAW entered into a second Sales Agent Program Agreement ("Second Agreement") with AMERICAN REGISTRY, a true and accurate copy of which is attached hereto as Exhibit "B."

33.    Pursuant to the Second Agreement, AMERICAN REGISTRY provided HANAW with qualified leads of individuals or companies who were recently recognized for achievement or received a notable mention in the media for which HANAW was responsible for pursuing said leads and providing the prospective customer of a preview of the wall plaque, desktop marquee or other promotional products via permission-based

email and/or fax for purchase by the prospect.  HANAW was to use his best efforts to convert the leads into sales.

34.     Pursuant to the Second Agreement, HANAW understood and recognized that he would be acquiring knowledge of confidential business information relating to the business or plans of AMERICAN REGISTRY, including, but not limited to, customer lists, customer identity, purchase and credit information, sales and operation procedures of AMERICAN REGISTRY, software of AMERICAN REGISTRY, system architecture of AMERICAN REGISTRY, financial data of AMERICAN REGISTRY, sales and marketing strategies and data of AMERICAN REGISTRY, lists compiled by AMERICAN REGISTRY, statistics, programs, research, development, employee, personnel and contractor data, information and records, and information relating to products offered by AMERICAN REGISTRY.

35.     Pursuant to the Second Agreement, HANAW agreed to treat all such confidential business information or trade secrets relating to the business or plans of AMERICAN REGISTRY as confidential and proprietary and further agreed not to publish, communicate, divulge, use or disclose, directly or indirectly, for his own benefit or for the benefit of another, such information.

36.     Pursuant to the Second Agreement, HANAW agreed that upon separation from AMERICAN REGISTRY, he would deliver all records, data, information, and other documents produced or acquired and all copies thereof in each case to AMERICAN REGISTRY.

37.     On or about March 26, 2010, AMERICAN REGISTRY terminated HANAW's status as an independent contractor sales agent for AMERICAN REGISTRY.

38.     As grounds for the termination, AMERICAN REGISTRY discovered that HANAW was paid bonuses that were in fact not due to him by placing orders for new contacts on his accounts when in reality the orders were for previous buyers who were requesting the orders.   Once the order was placed by HANAW and the bonus recorded as a new buyer, HANAW would go back into the order and change the details to reflect the previous buyer's details.

39.     In or around April, 2010, shortly after his termination from AMERICAN REGISTRY, HANAW met with LEVY to discuss the formation and organization of a company that would offer for sale personalized, customized achievement recognition items through an e-commerce website.

40.     Shortly thereafter, upon information and belief, HANAW and LEVY caused the formation and organization of Showmark Media, LLC, a limited liability company organized under the laws of the State of Florida.

41.     Showmark Media, LLC, a Florida limited liability company, was formed on May 12, 2010 and subsequently dissolved on July 19, 2010.

42.     After dissolving the Florida limited liability company, HANAW and LEVY, with the assistance of attorney Eli D. Clark, incorporated SHOWMARK MEDIA on September 10, 2010.

43.     Upon information and belief, HANAW and LEVY own 75% and 25%,

respectively, of the membership interests in SHOWMARK MEDIA. HANAW holds his 75% interest in SHOWMARK MEDIA by and through SHOWMARK HOLDINGS, an entity which is 100% owned and controlled by HANAW.

44.     During the course of and as a consequence of his independent contractor relationship with AMERICAN REGISTRY, HANAW was intimately familiar with, had access to, and acquired extensive knowledge of AMERICAN REGISTRY's Proprietary Information, as well as being privy to such issues as AMERICAN REGISTRY's business and marketing strategies and plans, costs, pricing, customer and supplier relationships, and financial strategies and results.

45.     Access to and knowledge of AMERICAN REGISTRY's Proprietary Information, as well as its business and marketing strategies and plans, costs, pricing, customer and supplier relationships, and financial strategies and results, all would be highly valuable to a competitor. With this information, a competitor could replicate AMERICAN REGISTRY's products and sales methods in order to undercut AMERICAN REGISTRY, while also avoiding much of the expense and time that it took AMERICAN REGISTRY to develop this information. Moreover, another manufacturer, such as SHOWMARK MEDIA, would benefit greatly from learning the details of AMERICAN REGISTRY's production parameters, product characteristics, competitive position in the marketplace, including pricing, price points, and analyses of competitors' products and projects as to their costs, without incurring any of the substantial expenses and efforts incurred by AMERICAN REGISTRY.

46.     During the course of his independent contractor relationship with AMERICAN REGISTRY and prior to the termination of same, HANAW personally and physically thieved, copied, reproduced, replicated, converted, and misappropriated as much of AMERICAN REGISTRY's Proprietary Information as possible with the objective of forming and operating SHOWMARK MEDIA.

47.     HANAW utilized and disclosed, and continues to utilize and disclose AMERICAN REGISTRY's Proprietary Information in the operation of SHOWMARK MEDIA.  In particular, he is utilizing the Proprietary Information he had access to and knowledge of during the course of his independent contractor relationship with AMERICAN REGISTRY, coupled with the Proprietary Information he personally and physically thieved, copied, reproduced, replicated, converted and misappropriated, to emulate AMERICAN REGISTRY's business model and to directly target AMERICAN REGISTRY's customers.

48.     HANAW personally, physically, willfully, knowingly, maliciously, and wrongfully thieved, copied, reproduced, replicated, converted and misappropriated AMERICAN REGISTRY's Proprietary Information.  Specifically, prior to having his sales agency relationship terminated by AMERICAN REGISTRY, HANAW personally, physically, willfully, knowingly, maliciously, and wrongfully thieved, copied, reproduced, replicated, converted and misappropriated AMERICAN REGISTRY's Proprietary Information, including its business plan to enable AMERICAN REGISTRY to generate significant revenues that would be detrimental to AMERICAN REGISTRY's competitive

position in the industry of offering for sale and selling personalized, customized achievement recognition items, such as plaques, marquees, crystals, counter displays and banners, if Defendants, or any other competitor, were to misappropriate or replicate said plan to compete against AMERICAN REGISTRY; its customer lists and prospective customer lists or any derivation thereof relating to any particular group of its customers or prospective customers as well as the compilation of information contained in its customer relationship management software, including information about volume and frequency of sales, pricing and discount strategies, pertinent contractual agreements, graphic files, technical data, leads, business plans and marketing and sales strategies concerning said customers and prospective customers; its system architecture concerning its plaques, marquees, crystals, counter displays and banners; its financial data concerning revenues generates from is sale of personalized, customized achievement recognition items, such as plaques, marquees, crystals, counter displays and banners; its profits and profit margins with customers in connection with its sale of personalized, customized achievement recognition items, such as plaques, marquees, crystals, counter displays and banners; its statistical history with its customers and vendors; its computer programs and software concerning its entire business operations; its research and development information related to its customers and products offered for sale; information about its strategic partners and relationships with them (Martindale Hubbell, etc).; and data and information on its employees, independent contractors and third party vendors, all in an effort to emulate AMERICAN REGISTRY's business model and to directly target AMERICAN

REGISTRY's customers.

49.     HANAW continues to misappropriate AMERICAN REGISTRY's Proprietary Information by utilizing and disclosing said information to third parties in the operation of SHOWMARK MEDIA. In particular, he is utilizing the Proprietary Information he had access to and knowledge of during the course of his independent contractor relationship with AMERICAN REGISTRY, coupled with the Proprietary Information he personally and physically thieved, copied, reproduced, replicated, converted and misappropriated while under contract with AMERICAN REGISTRY, to emulate AMERICAN REGISTRY's business model and to directly target AMERICAN REGISTRY's customers.

50.     HANAW's misappropriation and disclosure also includes, but is not limited to, possessing and using AMERICAN REGISTRY's Proprietary Information without just cause or permission, disclosing the Proprietary Information to SHOWMARK MEDIA, and wrongfully taking, stealing and converting the Proprietary Information to emulate AMERICAN REGISTRY's business model and to directly target AMERICAN REGISTRY's customers.

51.     By reasons of the acts and conduct as alleged herein, AMERICAN REGISTRY has been required to retain the services of its undersigned counsel for the purpose of bringing this action, and AMERICAN REGISTRY has obligated itself to pay a reasonable fee for their services.

52.     All conditions precedent to the maintenance of this action have been

performed or fulfilled.

## COUNT I

### BREACH OF CONTRACT AGAINST HANAW
### (SECOND AGREEMENT)

53.    AMERICAN REGISTRY realleges and incorporates by reference herein

the allegations of Paragraphs 1 through 52, as if fully set forth herein.

54.    HANAW, by reason of the acts and conduct alleged in this Count I, has

breached and violated, and has threatened to breach and violate, the confidentiality and

proprietary information provision of the Second Agreement by using or disclosing the

Proprietary Information described above after it was thieved, copied, reproduced,

replicated, converted and misappropriated, including customer lists, information about

volume and frequency of sales, sales associates and representatives, purchasing agents,

operations personnel and/or contact persons, pricing and discount strategies, pertinent

contractual agreements regarding current business terms and transactions, transaction

histories, purchasing requirements, profitability considerations, customer preferences and

sensitivities, quality control standards and procedures, techniques and business

efficiencies, graphic files, technical data, leads, and business plans and marketing and sales

strategies concerning said customers and customer specific information and data, all of

which is now being utilized by HANAW in an effort to obtain and convert business of

those customers to HANAW and SHOWMARK MEDIA.

55.    HANAW has additionally breached the Second Agreement by failing to

deliver all records, data, information, and other documents produced or acquired by

HANAW and all copies thereof to AMERICAN REGISTRY upon his separation from AMERICAN REGISTRY.

56.    As a direct and proximate result of the above alleged acts and conduct of HANAW, AMERICAN REGISTRY has been damaged in an as-yet-undetermined amount, exclusive of interest and costs, consisting of lost profits, injured goodwill, and other compensatory damages, the exact amount of which will be established at the trial of this cause, and, if the acts and conduct of HANAW in violation of the sued-upon Agreement are permitted to continue, AMERICAN REGISTRY inevitably will suffer substantial and future damages.

57.    Although certain elements of the damage that AMERICAN REGISTRY has suffered and will suffer by reason of the wrongful conduct of HANAW are ascertainable, if the actions and conduct of HANAW in violation of the sued-upon Agreement are not permanently enjoined, AMERICAN REGISTRY will be irreparably injured and will have no adequate remedy at law, in that the long-term effect of HANAW's improper use or disclosure of confidential business information or trade secrets relating to the business or plans of AMERICAN REGISTRY, is extremely difficult or impossible to ascertain, and, therefore, such damages are of a character that cannot be readily, adequately, and completely estimated or repaired in dollars and cents.

58.    HANAW's breaches of the sued-upon Agreement have caused and will continue to cause irreparable harm to AMERICAN REGISTRY unless and until enjoined by this Court.

WHEREFORE, AMERICAN REGISTRY demands relief in its favor and against HANAW as follows:

A.   That judgment be entered for damages and interest thereon;

B.   That HANAW and those in active concert or participation with him, directly or indirectly, be enjoined from further breaches of the sued-upon Agreement; and

C.   That this Court award AMERICAN REGSITRY its costs and expenses; and

D.   That this Court grant such other and further legal and equitable relief against HANAW to which AMERICAN REGISTRY may be entitled.

## COUNT II

### VIOLATION OF UNIFORM TRADE SECRETS ACT AGAINST DEFENDANTS

59.   AMERICAN REGISTRY realleges and incorporates by reference herein the allegations of Paragraphs 1 through 52, as if fully set forth herein.

60.   AMERICAN REGISTRY's Proprietary Information constitutes trade secrets in that:   a) said items were a secret; b) the items were not generally known to the public and not readily ascertainable by those who could benefit from the disclosure or use of the trade secret; c) the items were valuable to AMERICAN REGISTRY's business and would be valuable to competitors who obtained them; d) AMERICAN REGISTRY expended considerable time, knowledge and expense in developing these items; and e) the items could not be easily duplicated or properly acquired by others.

61.   AMERICAN REGISTRY takes reasonable efforts to safeguard the

Proprietary Information.

62.     HANAW, prior to having his sales agency relationship terminated by AMERICAN REGISTRY, personally, physically, willfully, knowingly, maliciously, and wrongfully thieved, copied, reproduced, replicated, converted and misappropriated AMERICAN REGISTRY's trade secrets described above, including its business plan to enable AMERICAN REGISTRY to generate significant revenues that would be detrimental to AMERICAN REGISTRY's competitive position in the industry of offering for sale and selling personalized, customized achievement recognition items, such as plaques, marquees, crystals, counter displays and banners, if Defendants, or any other competitor, were to misappropriate or replicate said plan to compete against AMERICAN REGISTRY; its customer lists and prospective customer lists or any derivation thereof relating to any particular group of its customers or prospective customers as well as the compilation of information contained in its customer relationship management software, including information about volume and frequency of sales, pricing and discount strategies, pertinent contractual agreements, graphic files, technical data, leads, business plans and marketing and sales strategies concerning said customers and prospective customers; its system architecture concerning its plaques, marquees, crystals, counter displays and banners; its financial data concerning revenues generates from is sale of personalized, customized achievement recognition items, such as plaques, marquees, crystals, counter displays and banners; its profits and profit margins with customers in connection with its sale of personalized, customized achievement recognition items, such

as plaques, marquees, crystals, counter displays and banners; its statistical history with its customers and vendors; its computer programs and software concerning its entire business operations; its research and development information related to its customers and products offered for sale; information about its strategic partners and relationships with them (Martindale Hubbell, etc).; and data and information on its employees, independent contractors and third party vendors, all in an effort to emulate AMERICAN REGISTRY's business model and to directly target AMERICAN REGISTRY's customers.

63.     HANAW misappropriated AMERICAN REGISTRY's trade secrets in that he knew or had reason to know that they were trade secrets, used improper means to acquire said trade secrets during his tenure with AMERICAN REGISTRY by personally, physically, willfully, knowingly, maliciously, and wrongfully stealing, copying, reproducing, replicating and converting them, and disclosed said trade secrets to third parties, including, without limitation, LEVY and SHOWMARK MEDIA, without AMERICAN REGISTRY's consent.

64.     HANAW's specific acts of misappropriation included acquiring the Proprietary Information without AMERICAN REGISTRY's consent; wrongfully taking the Proprietary Information by personally, physically, willfully, knowingly and maliciously stealing, copying, reproducing, replicating and converting said information; actively soliciting AMERICAN REGISTRY's customers for business armed with the Proprietary Information; and disclosing trade secrets of AMERICAN REGISTRY to LEVY, SHOWMARK HOLDINGS and SHOWMARK MEDIA.

65.    LEVY,   SHOWMARK   HOLDINGS   and   SHOWMARK   MEDIA, subsequent to HANAW's disclosure of the trade secrets to them, have likewise misappropriated the trade secrets and conspired with HANAW to appropriate to their own use trade secrets and Proprietary Information acquired by HANAW during the course of his sales agency relationship with AMERICAN REGISTRY.   Defendants used the trade secrets and Proprietary Information for their own purposes in the formation and operation of SHOWMARK MEDIA.

66.    HANAW, LEVY, SHOWMARK HOLDINGS and SHOWMARK MEDIA continue to misappropriate AMERICAN REGISTRY's trade secrets by utilizing and disclosing them to third parties in the operation of SHOWMARK MEDIA.   In particular, HANAW, LEVY, SHOWMARK HOLDINGS and SHOWMARK MEDIA are utilizing the trade secrets HANAW had access to and knowledge of during the course of his independent contractor relationship with AMERICAN REGISTRY, coupled with the trade secrets HANAW personally and physically thieved, copied, reproduced, replicated, converted and misappropriated while under contract with AMERICAN REGISTRY, to emulate AMERICAN REGISTRY's business model.

67.    HANAW's,   LEVY's,   SHOWMARK   HOLDINGS'   and   SHOWMARK MEDIA's misappropriation and disclosure also includes, but is not limited to, possessing and using AMERICAN REGISTRY's trade secrets without just cause or permission, disclosing the trade secrets to third parties, wrongfully taking and converting the trade secrets to emulate AMERICAN REGISTRY's business model, and wrongfully taking and

Page 22 of 32

converting the trade secrets to directly target AMERICAN REGISTRY's customers with the ability to undercut pricing, provide discounts, and otherwise attempt to provide more advantageous price points.

68. HANAW, LEVY, SHOWMARK HOLDINGS and SHOWMARK MEDIA knew, or had reason to know, that HANAW had a duty to maintain the secrecy of AMERICAN REGISTRY's trade secrets.

69. Defendants' misappropriation of AMERICAN REGISTRY's trade secrets was willful and malicious in that Defendants did so with the intent to financially injure AMERICAN REGISTRY and for their own benefit.

70. Defendants' acts have resulted, and will continue to result, in Defendants' unjust enrichment. The Defendants' use of such trade secrets and Proprietary Information has caused damage to AMERICAN REGISTRY, the exact amount of which will be established at the trial of this cause and, if the acts and conduct of Defendants in the utilization or misappropriation of such trade secrets are permitted to continue, AMERICAN REGISTRY inevitably will suffer substantial and future damages.

71. Although certain elements of the damage that AMERICAN REGISTRY has suffered and will suffer by reason of the wrongful conduct of Defendants are ascertainable, if the actions and conduct of Defendants in the utilization or misappropriation of such trade secrets are not permanently enjoined, AMERICAN REGISTRY will be irreparably injured and will have no adequate remedy at law, in that the long-term effect of Defendants' utilization or misappropriation of such trade secrets

relating to the business or plans of AMERICAN REGISTRY, is extremely difficult or impossible to ascertain, and, therefore, such damages are of a character that cannot be readily, adequately, and completely estimated or repaired in dollars and cents.

72.     Defendants' utilization or misappropriation of such trade secrets relating to the business or plans of AMERICAN REGISTRY have caused and will continue to cause irreparable harm to AMERICAN REGISTRY unless and until enjoined by this Court.

73.     Pursuant to Section 688.005, Florida Statutes, AMERICAN REGISTRY is entitled to recover its attorney's fees from Defendants.

WHEREFORE, AMERICAN REGISTRY demands relief in its favor and against the Defendants as follows:

A.     That judgment be entered for damages in an amount equal to the actual losses sustained by AMERICAN REGISTRY as a result of Defendants' use of   AMERICAN REGISTRY's trade secrets;

B.     That Defendants and those in active concert or participation with them, directly   or   indirectly,   be   enjoined   from   further   utilization   or misappropriation of such trade secrets; and

C.     That this Court award AMERICAN REGISTRY its reasonable attorney's fees and other costs and expenses under Section 688.003, Florida Statutes; and

D.     That this Court grant such other and further legal and equitable relief against the Defendants, to which AMERICAN REGISTRY may be

entitled.

## COUNT III

### VIOLATION OF FLORIDA UNFAIR
### AND DECEPTIVE TRADE PRACTICES ACT

74.     AMERICAN REGISTRY realleges and incorporates by reference herein the allegations of Paragraphs 1 through 52, as if fully set forth herein.

75.     Defendants utilized unfair methods of competition, unconscionable acts or practices and unfair or deceptive practices in the conduct of trade or commerce within the meaning of Section 501.204, Florida Statutes.

76.     Defendants have engaged in unfair methods of competition, unconscionable acts or practices and unfair or deceptive practices by:

a.     Operating a business, i.e., SHOWMARK MEDIA, that has used or is using AMERICAN REGISTRY's business plans and marketing and sales strategies and plans;

b.     Misappropriating and utilizing AMERICAN REGISTRY's customer lists and prospective customer lists or any derivation thereof relating to any particular group of its customers or prospective customers as well as the compilation of information contained in its customer relationship management software, including information about volume and frequency of sales, pricing and discount strategies, pertinent contractual agreements, graphic files, technical data, leads, business plans and marketing and sales strategies concerning said customers and prospective customers;

c.     Misappropriating and utilizing AMERICAN REGISTRY's system

Page 25 of 32

architecture concerning its plaques, marquees, crystals, counter displays and banners;

     d.     Misappropriating and utilizing AMERICAN REGISTRY's financial data concerning revenues generates from its sale of personalized, customized achievement recognition items, such as plaques, marquees, crystals, counter displays and banners;

     e.     Misappropriating and utilizing AMERICAN REGISTRY's profits and profit margins with customers in connection with its sale of personalized, customized achievement recognition items, such as plaques, marquees, crystals, counter displays and banners;

     f.     Misappropriating and utilizing AMERICAN REGISTRY's statistical history with its customers and vendors;

     g.     Misappropriating and utilizing AMERICAN REGISTRY's computer programs and software concerning its entire business operations;

     h.     Misappropriating and utilizing AMERICAN REGISTRY's research and development information related to its customers and products offered for sale;

     i.     Misappropriating and utilizing AMERICAN REGISTRY's information about its strategic partners and relationships with them (Martindale Hubbell, etc).;

     j.     Misappropriating and utilizing AMERICAN REGISTRY's data and information on its employees, independent contractors and third party vendors, all in an effort to emulate AMERICAN REGISTRY's business model and to directly target

AMERICAN REGISTRY's customers;

        k.    Intentionally and unjustifiably interfering with AMERICAN REGISTRY's customer relationships;

        l.    Converting AMERICAN REGISTRY's customers and soliciting said customers and prospective customers with knowledge of AMERICAN REGISTRY's proprietary and confidential information; and

        m.    Palming off AMERICAN REGISTRY's products and creating customer confusion through the use of AMERICAN REGISTRY's proprietary and confidential information.

        77.    Defendants' unfair methods of competition, unconscionable acts or practices and unfair or deceptive practices were without just cause or permission, were for their benefit and to the detriment of AMERICAN REGISTRY, were undertaken to emulate AMERICAN REGISTRY's business model, and were undertaken to directly target AMERICAN REGISTRY's customers with the ability to undercut pricing, provide discounts, and otherwise attempt to provide more advantageous price points.

        78.    Defendants' acts have resulted, and will continue to result, in Defendants' unjust enrichment. The Defendants unfair methods of competition, unconscionable acts or practices and unfair or deceptive practices in the conduct of trade or commerce has caused damage to AMERICAN REGISTRY, the exact amount of which will be established at the trial of this cause.

        79.    Pursuant to Section 501.2105, Florida Statutes, AMERICAN REGISTRY

is entitled to recover its attorney's fees from Defendants.

WHEREFORE, AMERICAN REGISTRY demands relief in its favor and against the Defendants as follows:

A.   That judgment be entered for damages;

B.   That this Court award AMERICAN REGISTRY its reasonable attorney's fees and other costs and expenses under Section 501.2105, Florida Statutes; and

C.   That this Court grant such other and further legal and equitable relief against the Defendants, to which AMERICAN REGISTRY may be entitled.

## COUNT IV

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

80.   AMERICAN REGISTRY realleges and incorporates by reference herein the allegations of Paragraphs 1 through 52, as if fully set forth herein.

81.   AMERICAN REGISTRY has business relationships with its customers, which are protected from tortious interference through confidentiality agreements, and pursuant to which AMERICAN REGISTRY has legal rights (hereinafter referred to as the "Customer Relationships").

82.   HANAW executed his confidentiality agreement ("Second Agreement").

83.   The Second Agreement provides that HANAW would be acquiring knowledge of confidential business information or trade secrets relating to the business or

plans of AMERICAN REGISTRY, including, but not limited to, customer lists, customer identity, purchase and credit information, sales and operation procedures of AMERICAN REGISTRY, software of AMERICAN REGISTRY, system architecture of AMERICAN REGISTRY, financial data of AMERICAN REGISTRY, sales and marketing strategies and data of AMERICAN REGISTRY, lists compiled by AMERICAN REGISTRY, statistics, programs, research, development, employee, personnel and contractor data, information and records, and information relating to products offered by AMERICAN REGISTRY.

84.     Pursuant to the Second Agreement, HANAW agreed to treat all such confidential business information or trade secrets relating to the business or plans of AMERICAN REGISTRY as confidential and proprietary to confidential business information or trade secrets relating to the business or plans of AMERICAN REGISTRY and further agreed not to publish, communicate, divulge, use or disclose, directly or indirectly, for his own benefit or for the benefit of another, such information.

85.     Pursuant to the Second Agreement, HANAW agreed that upon separation from AMERICAN REGISTRY, he would deliver all records, data, information, and other documents produced or acquired and all copies thereof in each case to AMERICAN REGISTRY.

86.     The Defendants had knowledge of the Customer Relationships and AMERICAN REGISTRY's legal rights in connection with these relationships.

87.     The Defendants intentionally and unjustifiably interfered with the

Customer Relationships by wrongfully converting the Proprietary Information, converting customers and soliciting AMERICAN REGISTRY's customers.   The Defendants intentionally and unjustifiably continue to interfere with the Customer Relationships.

88.   As a direct and proximate result of Defendants' tortious interference, AMERICAN REGISTRY has suffered damages including, but not limited to, loss of business and customers, damage to reputation and goodwill, and other expenses incurred as the result of Defendants' wrongful interference.

WHEREFORE, AMERICAN REGISTRY demands relief in its favor and against Defendants for damages and interest thereon, costs and expenses, and such other and further legal and equitable relief against HANAW to which AMERICAN REGISTRY may be entitled.

## COUNT V

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

89.   AMERICAN REGISTRY realleges and incorporates by reference herein the allegations of Paragraphs 1 through 52, as if fully set forth herein.

90.   AMERICAN REGISTRY has business and contractual relationships, which include confidentiality agreements, including, but not limited to, the Second Agreement, under which AMERICAN REGISTRY has legal rights.

91.   LEVY, SHOWMARK HOLDINGS and SHOWMARK MEDIA had knowledge of the business and contractual relationship, including the Second Agreement, between AMERICAN REGISTRY and HANAW.

92.    LEVY, SHOWMARK HOLDINGS and SHOWMARK MEDIA intentionally and unjustifiably interfered with the relationship between AMERICAN REGISTRY and HANAW by inducing and/or assisting HANAW to breach the Second Agreement.    LEVY, SHOWMARK HOLDINGS and SHOWMARK MEDIA intentionally and unjustifiably continue to interfere with the Second Agreement and AMERICAN REGISTRY's legal rights thereunder.

93.    As a direct and proximate result of LEVY's, SHOWMARK HOLDINGS' and SHOWMARK MEDIA's tortious interference, AMERICAN REGISTRY has suffered damages including, but not limited to, loss of business and customers, damage to reputation and goodwill, and other expenses incurred as the result of LEVY's, SHOWMARK HOLDINGS' and SHOWMARK MEDIA's wrongful interference.

WHEREFORE, AMERICAN REGISTRY demands relief in its favor and against LEVY, SHOWMARK HOLDINGS and SHOWMARK MEDIA for damages and interest thereon, costs and expenses, and such other and further legal and equitable relief against HANAW to which AMERICAN REGISTRY may be entitled.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

AMERICAN REGISTRY demands a trial by jury for all issues triable of right by jury.

/s/ C. Berk Edwards
C. Berk Edwards
Trial Counsel
Florida Bar No.0018953
Geraghty, Dougherty & Edwards, P.A.
Post Office Box 1605

Page 31 of 32

Fort Myers, Florida 33902
239/334-9500 Telephone
239/334-8930 Facsimile
berk@swfltrial.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF and a copy has been furnished via email to:

Jonathon E. Pollard, Esquire
401 E. Las Olas Blvd #1400
Fort Lauderdale, FL 33301
jpollard@pollardllc.com

This 19th day of December, 2013.

/s/ C. Berk Edwards
C. Berk Edwards

Page 32 of 32