UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AMERICAN REGISTRY, LLC, a
Delaware limited liability
company,

       Plaintiff,

v.                                    Case No: 2:13-cv-352-FtM-29CM

YONAH HANAW, MICHAEL LEVY,
SHOWMARK HOLDINGS, LLC, a
Delaware limited liability
company, and SHOWMARK MEDIA,
LLC, a Delaware limited
liability company,

       Defendants.

_____

**OPINION AND ORDER**

    This matter comes before the Court on review of defendants'
Motion to Dismiss Third Amended Complaint (Doc. #42) filed on
January 20, 2014. Plaintiff filed a Response (Doc. #46) on
February 3, 2014, and defendants, with leave of the Court, filed
a Reply (Doc. #49) on February 27, 2014. Also before the Court is
defendant Michael Levy's Motion to Dismiss Third Amended Complaint
for Lack of Personal Jurisdiction (Doc. #43) filed on January 20,
2014. Plaintiff filed a Response (Doc. #45) on February 3, 2014.

**I.**

    On May 7, 2013, plaintiff American Registry, LLC (plaintiff)
filed a five-count Complaint against Yonah Hanaw (Hanaw), Michael

Levy (Levy), Showmark Holdings, LLC (Showmark Holdings), and Showmark Media, LLC (Showmark Media).  (Doc. #1.)  In order to resolve jurisdictional deficiencies, plaintiff filed a Second Amended Complaint (Doc. #7) on May 22, 2013.  Thereafter, Levy filed a motion to dismiss for lack of personal jurisdiction (Doc. #22), and the remaining defendants filed a motion to dismiss for failure to state a plausible claim (Doc. #23).  On December 5, 2013, the Court dismissed the Second Amended Complaint as inadequately pled and provided plaintiff with an opportunity to amend.  (Doc. #35.)  Plaintiff filed a five-count Third Amended Complaint on December 19, 2013.  In support thereof, plaintiff alleges as follows:

Plaintiff sells customized achievement recognition items, such as plaques, marquees, crystals, counter displays, and banners, throughout the United States.  In connection with its business operations, plaintiff has developed and acquired an extensive list of trade secrets necessary to conduct its business operations, including, but not limited to, its business plan; customer lists; system architecture; financial data; profits and profit margins; statistical history with its customers and vendors; computer programs and software concerning its entire business operations; research and development information related to its customers and products offered for sale; information about its strategic partners and relationships with them; and data and

information on its employees, independent contractors, and third party vendors (collectively, "Proprietary Information").  By utilizing this information, plaintiff is able to maintain a competitive advantage in the personal achievement recognition market.

Defendant Yonah Hanaw, a citizen and resident of Israel, worked as a sales agent and independent contractor for plaintiff from November 2003 until his termination on March 26, 2010.  As a sales agent, Hanaw was required to sign a Sales Agent Program Agreement on November 1, 2009.[1]  The Sales Agent Program Agreement provides, in relevant part, that the sales agent agrees to treat all confidential business information and trade secrets as confidential and proprietary to plaintiff and is prohibited from using such information for his own benefit or for the benefit of another.  Upon separation from the company, the sales agent shall deliver all records, data, information, and other documents produced or acquired and all copies thereof to plaintiff.  (Doc. #36-2.)

After his termination, Hanaw met with Michael Levy, also a citizen and resident of Israel, to discuss the formation and organization of a company that would sell customized achievement

---

[1]Prior to signing this agreement, Hanaw was bound by a Sales Agent Program Agreement signed on January 13, 2008.  (Doc. #36-1.)

recognition items through an e-commerce website.  On May 12, 2010, Hanaw and Levy formed Showmark Media, LLC, a Florida limited liability company, but dissolved it on July 19, 2010.  After the dissolution of the Florida limited liability company, Hanaw and Levy formed Showmark Media, LLC, a Delaware limited liability company.[2]

While working as an independent contractor for plaintiff, Hanaw became intimately familiar with, had access to, and acquired extensive knowledge of plaintiff's Proprietary Information, and was privy to plaintiff's business and marketing strategies and plans, costs, pricing, customer and supplier relationships, and financial strategies.  Prior to his termination, Hanaw "physically thieved, copied, reproduced, replicated, converted, and misappropriated" as much of plaintiff's confidential and Proprietary Information as possible.  (Doc. #36, ¶ 46.)  Hanaw has utilized and disclosed plaintiff's Proprietary Information in the operation of Showmark Media.  Specifically, Hanaw has used the Proprietary Information to emulate plaintiff's business model and to directly target plaintiff's customers.

---

[2]Plaintiff believes that Hanaw owns a 75 percent interest in Showmark Media by and through Showmark Holdings, LLC, a Delaware limited liability complaint.  Showmark Holdings is wholly owned and controlled by Hanaw.  Plaintiff believes Levy owns a 25 percent interest in Showmark Media.

The Third Amended Complaint sets forth the following five claims based on the alleged misappropriation of trade secrets: breach of contract against Hanaw only (Count I); violation of the Florida Uniform Trade Secrets Act (FUTSA) against all defendants (Count II); violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) against all defendants (Count III); and tortious interference with business relationships against all defendants (Counts IV and V).  Levy seeks dismissal from this lawsuit on the grounds that plaintiff has failed to allege facts that establish personal jurisdiction.  The remaining defendants contend that plaintiff's trade secret claim is barred by the statute of limitations and is inadequately pled.  Defendants also assert that Counts III, IV, and V are preempted by the FUTSA.

II.

The Court will first address defendants Hanaw, Showmark Media, and Showmark Holding's motion to dismiss.

**A.   Motion to Dismiss Standard**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations

5

must be "plausible" and "must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 555.  <u>See also</u> <u>Edwards v. Prime Inc.</u>, 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," <u>Mamani v. Berzain</u>, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." <u>Chaparro v. Carnival Corp.</u>, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

**B.   Timeliness of Plaintiff's Claim Under the FUTSA**

Defendants assert that plaintiff's claim for misappropriation of trade secrets is clearly barred by the three year statute of limitations.  Under Florida law, an action for misappropriation of trade secrets "must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."  Fla. Stat. § 688.007.

The statute of limitations is an affirmative defense, and the burden of proving an affirmative defense is on the defendant. Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1292 (11th Cir. 2005).  Dismissal under Rule 12(b)(6) on statute of limitations grounds is only appropriate if it is apparent from the face of the complaint that the claim is time-barred.  Id.  A motion to dismiss on statute of limitations grounds should not be granted where resolution depends either on facts not yet in evidence or on construction of factual ambiguities in the complaint in defendants' favor.  Omar ex rel. Cannon v. Lindsey, 334 F.3d 1246, 1252 (11th Cir. 2003).

After reviewing the allegations in the Third Amended Complaint, the Court is unable to determine when the alleged misappropriation was discovered or should have been discovered by the exercise of reasonable diligence.  Because it is not clear on the face of the complaint that plaintiff's claim for misappropriation of trade secrets is time-barred, defendants'

motion to dismiss Count II as untimely is denied. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845-50 (11th Cir. 2004).

## C.   Violation of the FUTSA

In order to state a plausible claim for misappropriation of trade secrets under the FUTSA, Fla. Stat. § 688.001 *et seq.*, plaintiff must allege that (1) it possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it. VAS Aero Servs., LLC v. Arroyo, 860 F. Supp. 2d 1349, 1358 (S.D. Fla. 2012) (citing Del Monte Fresh Produce Co. v. Dole Food Co., 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001)). The Court previously dismissed plaintiff's claim for misappropriation of trade secrets because the broad list of trade secrets in the Second Amended Complaint failed to give defendants notice of what was misappropriated and was devoid of factual allegations supporting the actual misappropriation. Defendants assert that plaintiff has once again failed to identify the alleged trade secrets with reasonable particularity or allege any facts regarding the alleged misappropriation.

### (1)  The Alleged Trade Secrets

In order to state a plausible claim under the FUTSA, a plaintiff need only identify the alleged trade secrets with reasonable particularity. Treco Int'l S.A. v. Kromka, 706 F. Supp.

2d 1283, 1286 (S.D. Fla. 2010) (citing Levenger Co. v. Feldman, 516 F. Supp. 2d 1272, 1287 (S.D. Fla. 2007)).  "To qualify as a trade secret, the information that the plaintiff seeks to protect must derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy." Del Monte, 136 F. Supp. 2d at 1291. Whether a particular type of information constitutes a trade secret is a question of fact. See Furmanite America, Inc. v. T.D. Williamson, Inc., 506 F. Supp. 2d 1134, 1141 (M.D. Fla. 2007).

Here, plaintiff replaced the long and broad list of alleged trade secrets found in the Second Amended Complaint with ten specific categories of trade secrets.  (Doc. #36, ¶ 22.) Defendants concede that, in certain circumstances, information contained in some of the ten categories may constitute a trade secret, but argue that some of the categories should be dismissed as vague.  The Court disagrees.  After thoroughly reviewing the allegations identifying the purported trade secrets in the Third Amended Complaint, the Court finds that plaintiff has described the alleged trade secrets with reasonable particularity; thus, dismissal for failure to identify the alleged trade secrets is not warranted.

**(2)   The Alleged Misappropriation**

Defendants also assert that plaintiff has failed to provide any factual allegations showing that the alleged misappropriation is plausible.  The FUTSA defines misappropriation as the:

(a)   Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b)   Disclosure or use of a trade secret of another without express or implied consent by a person who:

1. Used improper means to acquire knowledge of the trade secret; or

2. At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:

a. Derived from or through a person who had utilized improper means to acquire it;

b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

3. Before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Fla. Stat. § 688.002(2).

Here, plaintiff alleges that Hanaw acquired its Proprietary Information through the use of improper means.  Specifically, plaintiff alleges that Hanaw, prior to having his sales agency relationship terminated, physically thieved, copied, reproduced,

replicated, converted, and misappropriated American Registry's Proprietary Information.  (Doc. #36, ¶ 62.)  Plaintiff further alleges that Hanaw used the stolen Proprietary Information without plaintiff's consent in order to emulate plaintiff's business model and to directly target plaintiff's customers.  (Id.)  Hanaw also disclosed the stolen Proprietary Information to third parties, including Levy, Showmark Holdings, and Showmark Media, in breach of his contractual duty to preserve the secrecy of the Proprietary Information and without plaintiff's consent.  (Id. ¶ 63.)  The Court finds that these allegations are sufficient to state a plausible claim against Hanaw under the FUTSA.[3]

As to the remaining defendants, plaintiff alleges that Levy, Showmark Holdings, and Showmark Media acquired the stolen Proprietary Information from Hanaw when they knew, or had reason to know, that it was stolen and that Hanaw had a duty to preserve the secrecy of the information.  (Id. ¶¶ 65-66, 68.)  Plaintiff further alleges that Levy, Showmark Holdings, and Showmark Media have utilized the Propriety Information without just cause or

---

[3]Defendants argue in a footnote that the breach of contract claim asserted against Hanaw in Count I should be dismissed because plaintiff has failed to allege any facts regarding the misappropriation of trade secrets.  (Doc. #42, p. 8 n.1.)  The Court disagrees.  As discussed above, plaintiff has adequately alleged that Hanaw has used and disclosed plaintiff's Proprietary Information, and has further alleged that such conduct constitutes a breach of the Sales Agent Program Agreement.  Therefore, defendants' motion to dismiss Count I is denied.

permission to emulate plaintiff's business model and directly target plaintiff's customers with the ability to undercut pricing and provide discounts. (Id. ¶ 67.)

Defendants assert that these allegations should be disregarded because they are conclusory in nature. The Court finds that these allegations contain enough factual matter which plausibly suggest that Levy, Showmark Holdings, and Showmark Media have misappropriated plaintiff's trade secrets in violation of the FUTSA. Accordingly, defendants' motion to dismiss Count II of the Third Amended Complaint is denied.

### D. Preemption Under the FUTSA

Defendants Hanaw, Showmark Media, and Showmark Holdings contend that the remaining claims in the Third Amended Complaint are prohibited by the preemption provision of the FUTSA. The FUTSA displaces "conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." Fla. Stat. § 688.008(1). The FUTSA, however, does not preempt contractual remedies or "[o]ther civil remedies that are not based upon misappropriation of a trade secret." Fla. Stat. § 688.008(2)(a)-(b). "Thus, FUTSA preempts all claims, other than claims *ex contractu*, based on misappropriation of trade secrets." American Honda Motor Co. v. Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170, 1180 (M.D. Fla. 2005). Defendants contend that the remaining claims in the Third Amended Complaint are preempted by

the FUTSA because they are based solely on the misappropriation of trade secrets.

Plaintiff does not dispute that the FUTSA displaces other tort and statutory claims to the extent those claims are based solely on the misappropriation of trade secrets. Plaintiff argues, however, that a claim based upon the misappropriation of information that does not rise to the level of statutorily-defined "trade secret" should not be preempted.  In effect, plaintiff contends that it has pled its claims in the alternative.

A majority of jurisdictions considering this issue have rejected plaintiff's argument.  "[T]he UTSA's preemption provision has generally been interpreted to abolish all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status (e.g., idea misappropriation, information piracy, theft of commercial information, etc.)."  Hauck Mfg. Co. v. Astec Indus., Inc., 375 F. Supp. 2d 649, 655 (E.D. Tenn. 2004) (citing cases).  See also Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc., 852 F. Supp. 2d 925, 940 (S.D. Ohio 2012) (holding that the "UTSA preempts all claims based on misappropriation of information even if that information does not rise to the level of a 'trade secret.'"); CDC Restoration & Constr., LC v. Tradesmen Contractors, LLC, 274 P.3d 317, 330 (Utah. Ct. App. 2012) ("[A] majority of jurisdictions considering the

question have held that a court need not first determine whether the information that [the plaintiff] alleges was misappropriated constitutes a trade secret before determining whether [the UTSA] displaces [the plaintiff's] common-law claims."); BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., 235 P.3d 310, 323 (Haw. 2010) (holding that "HUTSA preempts non-contract, civil claims based on the improper acquisition, disclosure or use of confidential and/or commercially valuable information that does not rise to the level of a statutorily-defined trade secret.").

The primary criticism of the majority's interpretation of the UTSA's preemption provision "is that it would permit a plaintiff's claim to be preempted by a statute that grants him no cause of action." CDC Restoration & Constr., LC, 274 P.3d at 330 (internal quotation marks and citations omitted). That is, a plaintiff may be left unable to prove that its confidential information qualifies as a "trade secret" under the UTSA, yet barred by the UTSA from proceeding on any theory. Although this result may seem harsh, the UTSA's preemption provision does "permit individuals and corporate entities to protect their valuable commercial information contractually, regardless of whether such information meets the statutory definition of 'trade secret.'" Id. (quoting Mortgage Specialists, Inc. v. Davey, 904 A.2d 652, 664 (N.H. 2006)). See also Fla. Stat. § 688.008.

14

In light of the mandate that the FUTSA "be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this act among states enacting it," Fla. Stat. § 688.009, this Court will follow the majority's interpretation of the UTSA's preemption provision. Therefore, the Court finds that the FUTSA preempts all non-contract claims based on the misappropriation of confidential and/or commercially valuable information even if the information does not constitute a trade secret under the FUTSA. The Court must review the underlying factual allegations in each of the remaining claims to determine if they are based on the misappropriation of information, and therefore displaced by the FUTSA. E.g., Penalty Kick Mgmt. LTD. v. Coca Cola Co., 318 F.3d 1284, 1296-97 (11th Cir. 2003)

**(1)  Violation of the FDUTPA**

Count III of the Second Amended Complaint alleges a violation of the FDUTPA and is predicated on the use of plaintiff's Proprietary Information.[4]  No other factual allegations are provided.  Plaintiff argues that its claim under the FDUTPA is viable because it does not require proof of trade secret

---

[4]Plaintiff also alleges that defendants intentionally and unjustifiably interfered with plaintiff's customer relationships, converted and solicited plaintiff's customers, and created customer confusion by "palming" off plaintiff's products.  These allegations, however, are not entitled to presumption of truthfulness because the Third Amended Complaint is devoid of factual allegations supporting these conclusory statements.

misappropriation.  Plaintiff is correct in that a claim under the FDUTPA generally does not require proof of trade secret misappropriation; however, a FDUTPA claim based solely on the misappropriation of information, as is the case here, cannot avoid preemption under Fla. Stat. § 688.008.  See American Honda Motor Co., 390 F. Supp. 2d at 1181.  See also Hauck Mfg. Co., 375 F. Supp. 2d at 658 ("[I]f proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it."); BlueEarth Biofuels, LLC, 235 P.3d at 316 ("the UTSA's preemptive force reaches more than just claims *of* or *for* misappropriation of a trade secret.").  Because Count III of plaintiff's Third Amended Complaint is based solely on the misappropriation of plaintiff's Proprietary Information, it will be dismissed as preempted or displaced by the FDUTPA.

### (2)  Tortious Interference with Business Relations

Plaintiff sets forth two separate counts for tortious interference with business relations in the Third Amended Complaint.  Count IV alleges that "[t]he Defendants intentionally and unjustifiably interfered with Customer Relationships by wrongfully converting the Proprietary Information, converting customers and soliciting AMERICAN REGISTRY's customers."  (Doc. #7, ¶ 79.)  Even if the Court were to assume that the conclusory

allegations state a plausible claim, dismissal would still be warranted because the claim is premised solely on the use of plaintiff's Proprietary Information. Absent the wrongful conversion of plaintiff's Proprietary Information, there is nothing to suggest that the conversion and solicitation of American Registry's customers is tortious. See International Paper Co. v. Stuit, No. C11-2139JLR, 2012 WL 1857143, at *6-7 (W.D. Wash. May 21, 2012) (dismissing tortious interference claim as preempted because the claim hinged on defendant's use of plaintiff's trade secrets). Thus, Count IV is preempted or displaced by the FUTSA.

Count V alleges Levy, Showmark Holdings, and Showmark Media intentionally and unjustifiably interfered with the relationship between American Registry and Hanaw by inducing Hanaw to breach the confidentiality provision of the Sales Agent Program Agreement. The only way for plaintiff to prevail on this claim is to prove misappropriation of trade secrets or other confidential information. See BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., 780 F. Supp. 2d 1061, 1077 (D. Haw. 2011). Because all claims based on the misappropriation of information, whether or not it meets the definition of a trade secret, are pre-empted or displaced by the FUTSA, Count V is due to be dismissed.

In conclusion, the Court finds that Counts III, IV, and V are preempted or displaced by the FUTSA and will be dismissed as such.

The Court will now address Levy's motion to dismiss for lack of personal jurisdiction.

## III.

A court is obligated to dismiss an action against a defendant over which it has no personal jurisdiction. Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999). Whether a court has personal jurisdiction over a defendant in a diversity case is governed by a two-part analysis. Mutual Serv. Ins. Co. v. Frit Indus., 358 F.3d 1312, 1319 (11th Cir. 2004). The Court must first determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute. Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000) (citing Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996). If the Court determines that the long-arm statute is satisfied, it must then determine "whether the extension [of] jurisdiction comports with the due process requirements of the Fourteenth Amendment." Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002) (citing Posner, 178 F.3d at 1214).

The reach of Florida's long-arm statute is a question of Florida law and federal courts must construe it as would the Florida Supreme Court. United Techs. Corp. v. Mazer, 556. F.3d 1260, 1274 (11th Cir. 2009) (citations omitted). Absent some indication that the Florida Supreme Court would hold otherwise,

this Court is bound to the decisions of Florida's intermediate courts.  Id.

Under Florida law, "[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  Mazer, 556 F.3d at 1274 (citing Posner, 178 F.3d at 1214).  In assessing the sufficiency of the jurisdictional allegations, the Court must accept the factual allegations in the complaint as true.  Licciardello v. Lovelady, 544 F.3d 1280, 1284 n.3 (11th Cir. 2008) (citing Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)).  If the plaintiff's factual allegations are sufficient to support the exercise of personal jurisdiction, the burden then shifts to the defendant to challenge the allegations with affidavits or other evidence to the contrary.  Meier, 288 F.3d at 1269 (citations omitted).  The burden then shifts back to the plaintiff to produce evidence supporting jurisdiction.

In this mater, Levy has failed to submit an affidavit or any other evidence challenging the jurisdictional allegations; therefore, the Court's analysis is limited to the sufficiency of the allegations.

**A.   Florida's Long-Arm Statute**

Florida's long-arm statute provides for specific and general jurisdiction.  In this case, plaintiff relies solely on specific

jurisdiction.  "Specific jurisdiction refers to 'jurisdiction over causes of action arising from or related to a defendant's actions within the forum.'"  PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 808 (11th Cir. 2010) (quoting Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1220 n.27 (11th Cir. 2009)).  Florida's long-arm statute provides, in relevant part, that a person "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state" or "[c]omitting a tortious act within this state" is subject to specific personal jurisdiction.  Fla. Stat. § 48.193(1)(a)(1)-(2).

**(1)  Section 48.193(1)(a)(1) – Conducting Business in Florida**

A defendant "submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from" defendant's activities "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1).  In order to establish that a defendant is "carrying on a business" for the purpose of the long arm statute, the activities must be considered collectively and "show a general course of business activity in the State for pecuniary benefit." Fraser v. Smith, 594 F.3d 842, 848 (11th Cir. 2010) (citing Dinsmore v. Martin Blumenthal Assocs., Inc., 314 So. 2d 561, 564 (Fla. 1975)).  See also Horizon Aggressive Growth, L.P. v.

Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005).
Relevant factors include: (1) the presence and operation of an
office in Florida; (2) the possession and maintenance of a license
to do business in Florida; (3) the number of Florida clients
served; and (4) the percentage of overall revenue gleaned from
Florida clients. Horizon Aggressive, 421 F.3d at 1167 (internal
citations omitted).

Here, plaintiff alleges that Levy, a citizen and resident of
Israel, is subject to personal jurisdiction in Florida because he
participated in the formation and organization of Showmark Media.
(Doc. #36, ¶¶ 5, 7.) Showmark Media was originally formed as a
Florida limited liability company on May 12, 2010, and was
subsequently dissolved on July 19, 2010. (Id. ¶¶ 40-41.) Alleging
only that Levy participated in the formation of a company that was
dissolved approximately four years ago is not the same as alleging
that Levy is "operating . . . or carrying on a business or business
venture in this state." Fla. Stat. § 48.193(1)(a). See Schwab v.
Hites, 896 F. Supp. 2d 1124, 1135 (M.D. Fla. 2012).

Plaintiff also alleges that Levy and Showmark Media "conduct
business within this judicial district." (Doc. #36, ¶ 7.) This
allegation is conclusory and cannot serve as the basis for personal
jurisdiction. See Snow v. DirecTV, Inc., 450 F.3d 1314, 1318 (11th
Cir. 2006) ("vague and conclusory allegations . . . are
insufficient to establish a prima facie case of personal

jurisdiction . . . ."). Due to the absence of factual allegations showing a general course of business activity in Florida, the Court finds that plaintiff has failed to plead a prima facie case of jurisdiction against Levy under Fla. Stat. § 48.193(1)(a)(1).

### (2)  Section 48.193(1)(a)(2) – Committing a Tortious Act

Section 48.193(1)(a)(2) provides for jurisdiction over a defendant who "committ[s] a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2).  Plaintiff attempts to invoke this provision of the long-arm statute by alleging that Levy misappropriated plaintiff's Proprietary Information with the intent to financially injure plaintiff in Florida. (Doc. #36, ¶¶ 7, 69, 71.) Levy argues that the misappropriation of trade secrets is not a tortious act within the state where the improper disclosure or use occurs outside of Florida.  To support his contention, Levy cites to Arch Aluminum & Glass Co., Inc. v. Haney, 964 So. 2d 228 (Fla. 4th DCA 2007).

In Arch Aluminum, the plaintiff, a Florida corporation, employed the defendant as a national sales manager.  Id. at 230. During his employment with the plaintiff, the defendant gained access to confidential information, including client lists, sales projections, prior sales data, business plans, and financial statements.  Id.  The defendant had been informed, through the employee handbook, that such information was the property of the plaintiff.  Id. at 231.  Shortly after accepting a job with a

competitor in Nevada, the defendant disclosed the plaintiff's confidential information to his new employer. Id. The plaintiff brought suit against the defendant and his new employer, asserting claims for, among other things, misappropriation of trade secrets. Id.

The Florida appellate court determined that the acts of the defendant did not result in a tortious act in Florida because the distribution of the confidential information occurred in Nevada and Arizona. Id. at 233. "Even if [the plaintiff] suffered damage, it would have been a loss of western clients and the reduction of revenues from its Phoenix operation," not from Florida. Id. at 234. Consequently, the court concluded that the long-arm statute was not satisfied; therefore, the court did not have personal jurisdiction. Id.

Levy's reliance on Arch Aluminum hinges on the assumption that the use or disclosure of plaintiff's confidential information did not occur in Florida. Plaintiff, however, alleges that Levy used plaintiff's Proprietary Information in the formation and operation of Showmark Media in Florida and intended to injure plaintiff. (Doc. #36, ¶ 7.) Because the alleged use of plaintiff's Proprietary Information is tortious and occurred in Florida, the Court finds that plaintiff has adequately alleged personal jurisdiction pursuant to Fla. Stat. § 48.193(1)(a)(2).

**B.   Constitutional Due Process**

In order to determine whether the Due Process Clause permits the exercise of personal jurisdiction over a defendant who satisfies the long-arm statute, the court must consider two things. First, the court must determine whether the defendant has purposefully established such constitutionally significant contact with the state of Florida that he could have reasonably anticipated that he might be sued here in connection with those activities. If the defendant has done so, the court must determine whether the forum's interest in the dispute and the plaintiff's interest in obtaining relief are outweighed by the burden of the defendant having to defend himself in a Florida court.   <u>Licciardello</u>, 544 F.3d at 1284.

Levy argues that personal jurisdiction cannot be exercised because plaintiff has failed to allege that Levy has any contacts with Florida.   The Court disagrees.   As discussed above, plaintiff has alleged that Levy used the misappropriated information in the formation of Showmark Media in Florida and, more importantly, plaintiff has alleged that Levy's use and disclosure of the Proprietary Information was done with the intent to financially injure plaintiff in Florida.   The Court finds this to be sufficient.   <u>See Licciardello</u>, 544 F.3d at 1288 ("The Constitution is not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over [defendant] because his

24

intentional conduct in his state of residence was calculated to cause injury to [plaintiff] in Florida.").

Because Levy does not argue that the exercise of jurisdiction over him would not comport with fair play and substantial justice, the Court declines to address the issue.  In conclusion, the Court finds that plaintiff has pled a prima facie case for personal jurisdiction; therefore, Levy's motion to dismiss for lack of personal jurisdiction is denied.

Accordingly, it is now

**ORDERED:**

1.   Defendants' Motion to Dismiss Third Amended Complaint (Doc. #42) is **GRANTED in part and DENIED in part**.  Counts III, IV, and V of the Third Amended Complaint are **dismissed without prejudice.**  The motion is otherwise denied.

2.   Defendant Michael Levy's Motion to Dismiss Third Amended Complaint for Lack of Personal Jurisdiction (Doc. #43) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this   16th   day of July, 2014.

<br>

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of record