UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AMERICAN REGISTRY, LLC,
a Delaware limited liability company,

       Plaintiffs,

v.                               Case No. 2:13-cv-00352-JES-SPC

YONAH HANAW a/k/a JOHN HANAW,
MICHAEL LEVY, SHOWMARK
HOLDINGS, LLC, a Delaware limited
liability company, and SHOWMARK
MEDIA, LLC, a Delaware limited liability
company,

       Defendants.
_____/

**PLAINTIFF'S VERIFIED MOTION FOR VOLUNTARY DISMISSAL
WITH PREJUDICE AND SUPPORTING MEMORANDUM OF LAW**

     Plaintiff, AMERICAN REGISTRY, LLC, by and through the undersigned counsel,
pursuant to Rule 41 (a)(2) of the Federal Rules of Civil Procedure, respectfully moves for
an order voluntarily dismissing this action with prejudice, and in support thereof, states as
follows:

     1.     On May 7, 2013, Plaintiff filed this action for breach of contract,
misappropriation of trade secrets, violation of Florida's Unfair and Deceptive Trade
Practices Act, and tortious interference with business relationships predicated in part on
Defendants' wrongful taking and use of AMERICAN REGISTRY's Proprietary

Information; actively soliciting AMERICAN REGISTRY's customers for business; utilization of AMERICAN REGISTRY's trade secrets; and intentional interference with AMERICAN REGISTRY's customer relationships (Document 1). Defendant, Showmark Media, was formed by Defendant, Yonah Hanaw, a former independent contractor of Plaintiff subject to a non-disclosure and confidentiality agreement, shortly after his termination by Plaintiff.

2.     On May 13, 2013, the Court entered its Order dismissing the Complaint for lack of subject matter jurisdiction (Document 3).

3.     On May 17, 2013, Plaintiff filed its Amended Complaint (Document 4).

4.     On May 20, the Court entered its Order dismissing the Amended Complaint for lack of jurisdiction (Document 6).

5.     On May 22, 2013, Plaintiff filed its Second Amended Complaint (Document 7).

6.     On July 11, 2013, Defendants filed Motions to Dismiss the Second Amended Complaint (Documents 22 and 23).

7.     On August 27, 2013, the Court entered its Case Management and Scheduling Order (Document 33).

8.     On September 6, 2013, Plaintiff served its Rule 26 Initial Disclosures.

9.     On September 12, 2013, Defendants served their Rule 26 Initial Disclosures.

10.     On October 3, 2013, Plaintiff served its Requests for Production on

Defendants, YONAH HANAW, SHOWMARK HOLDINGS, LLC and SHOWMARK MEDIA, LLC.

11.     On November 5, 2013, Defendants served written responses to the Requests for Production but objected to substantially all of the requests.

12.     On November 14, 2013, Plaintiff filed its Motion to Compel Responses to Requests for Production (Document 34).

13.     On October 15, 2013, Defendants served Plaintiff with their First Set of Interrogatories and First Request for the Production of Documents.

14.     On November 25, 2013, Plaintiff responded to Defendants' discovery requests.

15.     On December 5, 2013, the Court issued its Opinion and Order granting Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Document 35).

16.     On December 19, 2013, Plaintiff, in accordance with the December 5, 2013 Opinion and Order, filed its Third Amended Complaint (Document 36).

17.     On January 16, 2014, the Court entered its Order denying Plaintiff's Motion to Compel without prejudice (Document 41).

18.     On January 20, 2014, Defendants filed their Motions to Dismiss Third Amended Complaint (Documents 42 and 43).

19.     On April 21, 2014, Plaintiff filed its Renewed Motion to Compel (Document 53).

20.     On May 12, 2014, Defendants filed their Response to Plaintiff's Renewed

Motion to Compel and Motion to Stay Discovery (Document 56).

21.     On May 19, 2014, the Court entered its Order denying Plaintiff's Renewed Motion to Compel without prejudice (Document 58).

22.     On July 16, 2014, the Court issued its Opinion and Order granting in part and denying in part the Motion to Dismiss Third Amended Complaint (Document 61).

23.     As a result of the denial in part of the Motion to Dismiss Third Amended Complaint, Defendants served their Amended Responses and Objections to Plaintiff's First Request for Production on July 27, 2014.   In these Amended Responses, Defendants withdrew the majority of their objections raised in their original November 5, 2013 responses and agreed to produce responsive documents.

24.     On July 30, 2014, Defendants filed their Answer to the Third Amended Complaint (Document 62).

25.     On September 10, 2014, Plaintiff received responsive documents to its Request for Production.[1]

26.     In cross referencing the documents produced by Defendants with Plaintiff's Rule 26 disclosures, it was discovered that numerous e-mails known to exist between Defendants (and various representatives of theirs) and certain identified witnesses were not produced, including, but not limited to, a material witness who will be identified only as "PR" to avoid the actual publication of his name.   Defendants and their counsel are well aware of PR's identity.

---

[1]     Plaintiff had previously been provided documents that Defendants produced to Plaintiff in a patent lawsuit between the parties in Delaware, but those documents were largely unresponsive.

27.   Before the institution of this action, Plaintiff had multiple conversations with PR and received e-mails and other documents from PR.  Based on the information and documents provided by PR; the speed with which Defendant Hanaw was able to get Showmark Media up and running after his termination by American Registry; Hanaw's inside knowledge of Plaintiff's business from his time at American Registry, including Plaintiff's marketing programs, marketing materials, strategies, customer lists, pricing, Strategic Partners and relationships; and based on Plaintiff's pre-existing knowledge from routine business monitoring of the recognition item industry and marketplace and from inquiries from clients that Showmark Media was soliciting Plaintiff's customers using a marketing program and marketing materials that mimicked Plaintiff's program and materials, it became readily apparent that Defendant Hanaw had misappropriated proprietary business information from Plaintiff prior to his termination, necessarily including some or all of the following: customer lists; customer relationship management software; pertinent contractual agreements, graphic files, technical data, leads, business plans and marketing and sales strategies concerning its customers; its system architecture concerning its plaques, marquees, crystals, counter displays and banners; its financial data concerning revenues generates from its sale of personalized, customized achievement recognition items, such as plaques, marquees, crystals, counter displays and banners; its profits and profit margins with customers in connection with its sale of personalized, customized achievement recognition items, such as plaques, marquees, crystals, counter displays and banners; its statistical history with its customers and vendors; its research and

development information related to its customers and products offered for sale; information about its Strategic Partners and relationships with them (Martindale Hubbell, etc).; and data and information on its employees, independent contractors and third party vendors.

28.      PR also indicated that Showmark Media had a "mole" working for Plaintiff in Israel.   PR also indicated that in 2009, Rachel Leland, an Israeli citizen that worked for Plaintiff at one time, came into Plastiplak (American Registry's plaque manufacturer) looking for a plaque manufacturer and asking about American Registry plaques she saw hanging on the wall.   Ms. Leland is now affiliated with Showmark Media.

29.      PR also approached Dolph Ventimiglia of Plastiplak and asked Mr. Ventimiglia to copy American Registry's plaques for Showmark Media.

30.      The substance and nature of the information provided by PR established his credibility and reliability as a material witness initially.

31.      Within a short time frame following his termination by Plaintiff, Hanaw, through assistance from PR, was able to launch www.showmark.com, a website which Showmark Media offers for sale the same merchandise and product as Plaintiff by substantially similar means.   A Domain Report commissioned by Plaintiff prior to the institution of this action evidenced the registration of the domain on February 24, 2008, while Hanaw was an agent for American Registry.

32.      In preparation for the coordination of PR's deposition in this matter, conversations were had with PR wherein he indicated an unwillingness to produce

additional e-mail correspondence or other documentation that was represented to incriminate the Defendants absent being compensated over and above what a fact witness would ordinarily be compensated. He was obviously advised that any such arrangement could not be made, both for legal and ethical reasons.

33.    In recent communications with counsel for Defendants, Plaintiff also learned that PR was purportedly offering his testimony to the highest bidder.

34.    The circumstances surrounding PR have placed Plaintiff in a precarious situation with the ability to proceed forward in this matter. Any testimony or documentary evidence to be elicited from PR would give rise to serious admissibility and credibility issues, not to mention the potential ethical issues presented by a material witness who is seeking to be compensated. The situation surrounding PR is further exacerbated by Defendants' failure to produce e-mails known to exist between Defendants (and various representatives of theirs) and PR regarding the formation of Defendant, Showmark Media, the targeting of Plaintiff's account with Lexis-Nexis (Martindale Hubbell), and the establishment of a company so Defendants "would be a more difficult litigation target for American Registry." One of these Showmark Media representatives was the personal attorney of American Registry's President and CEO, who was retained by Showmark Media to aid in the establishment of a competing business.

35.    Accordingly, Plaintiff's Motion for Voluntary Dismissal With Prejudice is being made in good faith and for legitimate reasons, and benefits the Defendants by relieving them from the further costs of discovery and trial preparation.

36.     Pursuant to Local Rule 3.01(g), counsel certifies that he has conferred with opposing counsel and counsel has indicated that Defendants oppose the relief sought in this Motion.

## MEMORANDUM OF LAW

Upon the filing of an answer or a summary judgment motion, Rule 41(a)(2) of the Federal Rules of Civil Procedure (Rule(s)) governs a plaintiff's ability to voluntarily dismiss an action. *See* Rule 41(a)(1)-(2); *see also Pontenberg v. Boston Scientific Corp.,* 252 F.3d 1253, 1255 (11th Cir. 2001). Specifically, Rule 41(a)(2) permits a plaintiff to voluntarily dismiss an action only "by court order, on terms that the court considers proper." Rule 41(a)(2). A district court has broad discretion when considering a Rule 41(a)(2) motion for voluntary dismissal. *Pontenberg,* 252 F.3d at 1255. The Eleventh Circuit has noted that "'[t]he basic purpose of Rule 41 (a)(2) is to freely permit the plaintiff, with court approval, to voluntarily dismiss an action so long as no other party will be prejudiced.'" *Versa Prods., Inc. v. Home Depot, USA, Inc.,* 387 F.3d 1325, 1327 (11th Cir. 2004) (quoting *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 604 (5th Cir.1976)).

"'[I]n most cases, a voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice, *other than the prospect of a subsequent lawsuit,* as a result.'" *Pontenberg,* 252 F.3d at 1255 (quoting *McCants v. Ford Motor Co., Inc.,* 781 F.2d 855, 856–57 (11th Cir.1986)). "The crucial question to be determined is, [w]ould the defendant lose any substantial right by the dismissal." *Id.* (quoting *Durham v. Fla. E. Coast, Ry. Co.,* 385 F.2d 366, 368 (5th Cir.1967)). As discussed below, Defendants will

lose no substantial right by reason of voluntary dismissal of this matter because the requested dismissal with prejudice will provide them with a legal adjudication on the merits of those claims.

In the instant matter, Defendants will plainly not be prejudiced by Plaintiff's dismissal of this action. The requested dismissal *with* prejudice assures Defendants of finality because it operates as a judgment on the merits. *See generally Hart v. Yamaha-Parts Distrib., Inc.,* 787 F.2d 1468, 1470 (11th Cir. 1986) ("A dismissal with prejudice operates as a judgment on the merits unless the court specifies otherwise."); *see also Bioxy, Inc. v. Birko Corp.,* 935 F. Supp. 737, 740 (E.D.N.C. 1996) ("[A] voluntary dismissal with prejudice acts as an adjudication on the merits with full preclusive effect."). Defendants are entitled to nothing beyond that. *See Schwarz v. Folloder,* 767 F.2d 125, 129 (5th Cir. 1985) ("[N]o matter when a dismissal with prejudice is granted, it does not harm the defendant: The defendant receives all that he would have received had the case been completed."); *Smoot v. Fox,* 340 F.2d 301, 303 (6th Cir. 1964) ("Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties. An adjudication in favor of the defendants, by court or jury, can rise no higher than this."); *Sheridan v. Fox,* 531 F. Supp. 151, 155 (E.D. Pa. 1982) (""Because defendant is getting everything to which he is entitled were he to prevail on the merits in this action, he is not prejudiced by dismissal with prejudice.").

In response to Plaintiff's request to Defendants about a dismissal with prejudice, counsel for Defendants indicated via e-mail on October 15, 2014 that Defendants "will oppose your motion and indicate that we want to proceed in order to prevail on the merits and seek our fees." That statement does not provide a basis for opposing a voluntary dismissal. That Defendants want to move forward to try and posture the case for a summary judgment motion by proceeding with disposition of a pending Motion to Compel (Document 65) and other discovery is no barrier to Plaintiff's request for a voluntary dismissal.

First, as noted above, Plaintiff's voluntary acceptance of what amounts to an adjudication on the merits--through a dismissal with prejudice--confers upon Defendants precisely what a favorable summary judgment ruling or ultimate trial verdict would. This was recently addressed by Judge Howard in the case of *Moore v. Shands Jacksonville Medical Center, Inc.*, 2014 WL 2801202, *3 (MD. Fla. June 19, 2014), wherein the court granted a Rule 41(a)(2) motion with prejudice and stated as follows:

> Additionally, in weighing the potential harm of a dismissal without prejudice, the Court considers the timing of the dismissal because the later it is granted the more likely the defendant's exposure to additional litigation expenses. *Schwarz v. Folloder*, 767 F.2d 125, 129 (5th Cir.1985). On the other hand, if a plaintiff wishes to voluntarily dismiss a claim with prejudice, then there is no danger of harm to the defendant.
>
> Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties. An adjudication in favor of the defendants, by court or jury, can rise no higher than this. Consequently, no matter when a dismissal with prejudice is granted, it does not harm the defendant: The defendant receives all that he would have received had the case been completed.

*Schwarz*, 767 F.2d at 129 (internal citations and quotations omitted); *see also Chavez v. Northland Group*, No. CV–09–2521–PHX–LOA, 2011 WL 317482, at *4 (D.Ariz. Feb.1, 2011) ("The fact that the dismissal is with prejudice, such that Plaintiff's claims cannot be reasserted in another federal suit, supports a finding that the dismissal will cause no legal prejudice."). Although this case is now beyond the summary judgment stage of the proceedings, Plaintiff seeks to dismiss the only surviving claim *with prejudice*. Because Plaintiff will not seek to litigate this claim again and Defendant has not made any unnecessary preparations for trial, Defendant cannot suffer any harm from such a dismissal and the Court need not impose any conditions to rectify nonexistent prejudice. *See Schwarz*, 767 F.2d at 130. Accordingly, Plaintiff's Motion is due to be granted and her remaining claim is due to be dismissed with prejudice.

The same holds true in the case at bar.  Defendants cannot lay claim to making any unnecessary preparations for trial or any prejudice associated with discovery.  In fact, Defendants would be conflicted in doing so as a result of their having moved to stay discovery pending dispositions of the Motions to Dismiss directed at the Third Amended Complaint.  Regardless, there is no viable contention of clear legal prejudice and the Motion should be granted.  *First Fin. Bank v. CS Assets, LLC*, 434 Fed. Appx. 897, 897-98 (11th Cir. 2011) (failure of defendant to show it would suffer legal prejudice from the grant of plaintiff's motion to voluntary dismiss with prejudice resulted in affirmance of motion).

Second, where a plaintiff seeks dismissal with prejudice, a court should ordinarily honor that request.  *See Smoot*, 340 F.2d at 302-03 (reversing, on petition for writ of mandamus, district court's denial of motion for voluntary dismissal with prejudice as abuse of discretion; "[n]o case has been cited to us, nor have we found any, where a plaintiff, upon his own motion, was denied the right to dismiss his case with prejudice"); *Gilbreth Int'l Corp. v. Lionel Leisure, Inc.* 587 F. Supp. 605, 614 (E.D. Pa. 1983) ("'[W]here the plaintiff has consented to dismissal with prejudice and the defendants will not face a

second lawsuit on plaintiff's claim, the Court should grant the motion for dismissal so long

as it is not unfair to the defendant to do so.'') (citing cases); *see generally* 9 Charles Alan

Wright and Arthur R. Miller, *Federal Practice and Procedure §§* 2364, at 277 & n.11,

2367, at 318 & n.3 (2d ed. 1995) ("[W]hen a plaintiff wishes to dismiss with prejudice ...

the district court has no discretion to refuse such a dismissal and cannot force an unwilling

plaintiff to go to trial.")   In *Villa Glas G.m.b.H. v. Everstone Pty. Ltd.*, 2007 WL 2126296,

*1 (M.D. Fla. 2007), Judge Presnell stated:

> "[t]he Court's research has uncovered only a few instances in which a
> plaintiff's motion for dismissal with prejudice has been denied. In those
> cases, the courts have generally found that the dismissal would negatively
> affect third parties. *See, e.g., County of Sante Fe* at 1048 (finding that
> dismissal with prejudice by plaintiff would immunize defendant from suit
> by intervenors) *and Atwood v. Pacific Maritime Ass'n,* 432 F.Supp. 491
> (D.Or.1977) (finding that voluntary dismissal with prejudice of claim
> against one defendant would be unfair to co-defendant).

Based on the foregoing, the Court should grant the subject Motion.

In opposing the requested relief, Defendants have also indicated through counsel's

e-mail the desire to pursue recovery of their attorney's fees.   Under Rule 41(a)(2), the

award of attorney's fees is often made when a plaintiff dismisses an action without

prejudice. *Colombrito v. Kelly,* 764 F.2d 122, 133 (2d Cir.1985). Yet, in a voluntarily

dismissed lawsuit with prejudice under Rule 41(a)(2), attorney's fees have almost never

been awarded. *Id.* at 133–34.  Furthermore, several courts have held that the award of

attorney's fees in a voluntarily dismissed lawsuit with prejudice is only appropriate when

there is independent statutory authority to support such an award.  *Id.* at 134. *See also*

*Smoot v. Fox,* 353 F.2d 830, 832–33 (6th Cir.1965); *Lawrence v. Fuld,* 32 F.R.D. 329,

331–32 (D.Md.1963). This is because "[e]ven if such fees and costs could constitute 'prejudice,' they are a consequence of the filing of the suit, not its dismissal. *Villa Glas G.m.b.H. v. Everstone Pty. Ltd.*, 2007 WL 2126296, *2 (M.D. Fla. 2007)

As Judge Presnell noted in *Villa Glas G.m.b.H.*, any fees incurred by Defendants do not constitute prejudice under the Rule 41(a)(2) standard, because they are a consequence of the filing of the suit, not its dismissal.  As such, the only mechanism for an award of fees in the instant case is an independent contractual or statutory authority.  Because there is not a contractual provision for fees, the potential avenue for Defendants' recovery of fees is Florida Statute Section 688.005, part of Florida's Uniform Trade Secret Act.

"If a claim of misappropriation is made in bad faith ... the court may award reasonable attorney's fees to the prevailing party."  Fla. Stat. § 688.05.  The term "bad faith" is not defined in the Uniform Trade Secrets Act. *See Hammerton, Inc. v. Heisterman,* 2008 WL 4057010, *7 (D. Utah 2008) (applying Utah Uniform Trade Secrets Act).  Nor does it appear the Florida Supreme Court has defined the term under Section 688.005.  When the term is not defined, the court must predict how the supreme court of the state would define "bad faith."  The majority of courts interpreting the "bad faith" language of the attorney's fee provision of the Uniform Trade Secrets Act in other states require something more than an objectively frivolous claim and generally require proof of subjective misconduct. *FasTechs, LTD. v. Dainippon Screen Mfg., Co.,* 2001 WL 1159776, at *2 (N.D. Cal. 2001) ("[C]ourts have universally interpreted [bad faith under the Uniform Trade Secrets Act] to require a finding (1) that plaintiff's claims were

Page 13 of 16

objectively specious or frivolous, and (2) that there is evidence of subjective misconduct."); *Computer Econ ., Inc. v. Gartner Group, Inc.,* 1999 WL 33178020, at *5 (S.D.Cal. Dec.14, 1999) (requiring objective proof of frivolousness and subjective misconduct); *Contract Materials Processing, Inc. v. Kataleuna GMBH Catalysts,* 222 F.Supp.2d 733, 744 (D.Md.2002) (same); *Russo v. Baxter Healthcare Corp.,* 51 F.Supp.2d 70, 76–77 (D.R.I.1999) (requiring proof of subjective bad faith).

Given the facts and circumstances referenced above as to Plaintiff's investigation and pursuit of this claim, there can be no practical argument of objective speciousness and subjective misconduct by Plaintiff in making the claim. In fact, to the contrary, moving forward with documentary evidence and testimony from a material witness who was looking to be compensated for his effort would be subjective misconduct if Plaintiff did not move to voluntarily dismiss. Plaintiff can simply not move forward under those circumstances, especially in light of the fact this witness was to be an integral part of Plaintiff's case.

Defendants will ostensibly argue that Plaintiff has not identified the alleged trade secrets at issue and how Defendants allegedly misappropriated them as a reason to deny dismissal and/or award attorney's fees. Contrary to Defendants' belief, the Plaintiff in its Third Amended Complaint went beyond any requirement of *Twombly* and identified the trade secrets with particularity. Plaintiff also detailed the trade secrets at issue in answers to Defendants' interrogatories. Defendants just did not like the answers.

Moreover, as the Court noted in its Opinion and Order dated December 5, 2013, "[i]t is not common for a trade secret misappropriation plaintiff to know, prior to discovery, the details surrounding the purported misappropriation." (Document 35, page 7). Defendants had sought to stay discovery until disposition of their Motions to Dismiss the Third Amended Complaint and did not provide responses to the discovery sought in this case until September 10, 2014. These responses did not encompass numerous e-mails known to exist between Defendants (and various representatives of theirs) and certain identified witnesses, including, but not limited to, material witness PR. The e-mails known to exist relate to the formation of Showmark Media, the targeting of Plaintiff's account with Lexis-Nexis (Martindale Hubbell), and the establishment of a company so Defendants "would be a more difficult litigation target for American Registry." The inability of Defendants to produce these documents or Plaintiff's inability to compensate PR for them have clearly hindered Plaintiff's discovery of the precise details surrounding the misappropriation.

Summarily stated, attorney's fees should not be awarded Defendants as a condition of dismissal because Defendants cannot establish either prong of the "bad faith" test.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant its Verified Motion For Voluntary Dismissal With Prejudice pursuant to Rule 41(a)(2), dismiss Plaintiff's case with prejudice and not condition the dismissal on payment of costs or fees, and for whatever further relief this court deems just and proper.

## VERIFICATION

I, Avi Moskowitz, President and CEO of Plaintiff, swear and affirm that I have read

the foregoing Motion and the facts as alleged herein are true and correct.

_____
Avi Moskowitz

Sworn to and Subscribed before me this 22nd day of October , 2014.

_____
Notary Public

LISA A FUSARO
Notary Public, State of New York
No. 01FU5048019
Qualified in Suffolk County
Commission Expires August 14, 20 17

/s/ C. Berk Edwards
_____
C. Berk Edwards
Florida Bar No. 0018953
Geraghty, Dougherty & Edwards, P.A.
Attorneys for Plaintiff, American Registry, LLC
Post Office Box 1605
Fort Myers, Florida 33902-1605
239/334-9500 Telephone
239/334-8930   Facsimile
berk@SWFLtrial.com
suzanne@SWFLtrial.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing has been furnished via

email to:

Jonathon E. Pollard, Esquire
401 E. Las Olas Blvd #1400
Fort Lauderdale, FL 33301
jpollard@pollardllc.com

This 22nd day of October, 2014.

_____
/s/ C. Berk Edwards
C. Berk Edwards

Page 16 of 16